# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: )
)   Case No. 23-13747
CHIQUITA D. HULL )
)   Chapter 7
Debtor, )
)   Adversary Proceeding No.
CHARLENE CARTER, )   24-00011
)
Plaintiff, )
)   Honorable Donald R. Cassling
)
CHIQUITA D. HULL, )
Defendant. )
)

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
OCT 02 2024
JEFFREY P. ALLSTEADT, CLERK

## DEFENDANTS ANSWERS TO INTERROGATORIES

1.    With respect to the Tenant's security deposit:

i.    State the name and address of each financial institution where it has
been or is held. **Objection - Not Applicable Under RLTO § 5-12-020(a)** there is no RLTO
coverage if the landlord BOTH lives in the building AND there are six or fewer units in the
building. This is the "owner-occupied" exclusion.

ii.   State the account number at each financial institution where it has
been or is held. **Objection - Not Applicable Under RLTO § 5-12-020(a)** there is no RLTO
coverage if the landlord BOTH lives in the building AND there are six or fewer units in the
building. This is the "owner-occupied" exclusion.

iii.  State the time period it was or is held in each account. **Objection - Not Applicable Under RLTO
§ 5-12-020(a)** there is no RLTO coverage if the landlord BOTH lives in the building AND there are
six or fewer units in the building. This is the "owner-occupied" exclusion.

2.    Full Security deposit not return due to condition of unit upon departure per residential lease.
Trash and furnishings remained in the home, and several rooms in each unit were different
colors. **(See Exhibit A & B)**

3.    With Respect to each of the following properties:

11334 S. CHURCH STREET, CHICAGO, IL
8643 S EUCLID AVE, CHICAGO, IL
7711 S RIDGELAND AVE, CHICAGO, IL

State:

a)    Defendant's relationship to each property. **Objection -** Information requested for each
property is not relevant to the Plaintiffs claim for relief. Plaintiff claims fraud, in which she
must prove that the occurrence of fraud created the debt and that Defendant intended to
defraud Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created
in 2018.

b)    The source of the funds used as a down payment for each property. **Objection -** Information
requested for each property is irrelevant to the Plaintiff's claim for relief. Plaintiff claims
fraud, which she must prove that fraud actually occurred, the occurrence of said fraud
created the debt, and that Defendant intended to defraud the Plaintiff when the debt was
created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018

   c)   The monthly mortgage payment for each property. **Objection** - Information requested for each property is not relevant to the Plaintiffs claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A)This debt was created in 2018.

   d)   The source of the funds used to pay the mortgage for each property. **Objection** - Information requested for each property is not relevant to the Plaintiffs claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt , and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

   e)   The current utilization of each property. **Objection** - Information requested for each property is not relevant to the Plaintiffs claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018

   f)   The Names and monthly rental rates for any renter of each property. **Objection** - Information requested for each property not relevant to Plaintiffs claim for relief. Plaintiff claims fraud which she must prove that fraud actually occurred, the occurrence of said fraud created the debt , and the Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

4.     List all LLCs or other entities in which Defendant has an interest (be it manager, agent, principal, owner, or member), the nature of that interest, whether the entity is active or inactive, and if they are active, their activities and assets. **Objection** – The information requested i s not relevant to the Plaintiff's claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

5.     Has Defendant ever received service-connected disability compensation from the United States Department of Veterans Affairs? If so, does Defendant still receive such compensation, and how much. If Defendant no longer receives any such compensation, when was it stopped and why? **Objection** – The information requested i s not relevant to the Plaintiff's claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a) (2)(A) This debt was created in 2018.

6.     The Defendant does not own any real estate in Texas.

7.     Has Defendant registered a company in Texas at any time since 2021? **Objection** – The information requested i s not relevant to the Plaintiff's claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt , and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

8.   What are the activities and assets of OW2 Construction Group, LLC? **Objection** – The information requested i s  not relevant to the Plaintiff's claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

9.   What are the activities and assets of Hull + Wilson Development, LLC? **Objection** – The information requested i s  not relevant to the Plaintiff's claim for relief. Plaintiff claims fraud, which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018.

10.  What is Defendant's relationship to Dominique Bobo-Hull? Where does she reside? **Objection** - The information requested i s   not relevant to the Plaintiffs claim for relief. Plaintiff claims fraud , which she must prove that fraud actually occurred, the occurrence of said fraud created the debt, and that Defendant intended to defraud the Plaintiff when the debt was created. 11 U.S.C.A 523(a)(2)(A) This debt was created in 2018

Defendant , Chiquita D. Hull

By: _____

Chiquita D. Hull
1729 E. 86th Street
Chicago, IL 60617
(312) 975-6105
chiquita_hull@yahoo.com
Pro Se

**From:** **Chiquita Hull** chull@ow2realty.com 
**Subject:** Re: Charlene Carter/1729 E 86th St, Unit 2, Chicago, Illinois 60617
**Date:** July 25, 2019 at 2:54 PM
**To:** Joan Fenstermaker joanfenstermaker@gmail.com

Since your clients would like to move forward! Attached is only some of the pictures from their units. I wanted you to see all of the different color paints. I will now be pursuing damages for paint, drywall, and labor to remove carpet and do all the work to bring the units back up to livable codes (which they both installed themselves) on both units. And per unit the expenses are more than $10k each and I will not take a settlement from either of the ladies.

Both ladies refused to bring the units back up to livable standards; I did not bother either because I knew they were on a fixed income so I just ate the remodeling cost. But Since you all feel that 15 years and 35 years in a residence a tenant can have normal "wear and tear". I will have my lawyer to forward over both demand letters!

You all have an amazing day😊

Best,
Chiquita

































Sent from my iPhone

On Jul 25, 2019, at 2:16 PM, Joan Fenstermaker <joanfenstermaker@gmail.com> wrote:

Pursuant to Section 5-12-090 of the Chicago Residential Landlord and Tenant Ordinance, demand is made for you to disclose the street address at which you can be served with summons and complaint. If you do not disclose this information within 14 days, my client can make a claim against you for one month's rent as damages, plus payment of her attorneys fees and costs.

Joan Fenstermaker
Kendle, Mikuta & Fenstermaker
221 N. LaSalle Street
Suite 1430
Chicago, Illinois 60601
(312) 371-6473
(312) 782-0611 (fax)

On Thu, Jul 25, 2019 at 12:29 PM Chiquita Hull <chull@ow2realty.com> wrote:

Hi Joan,

Please be advised that your client was notified of all damages. Your client did not leave the unit in the condition that she received it. Also, the client painted the entire apartment multiple colors and did not return the walls to the original colors as specified in her lease. To repaint a 1392 square foot unit and repair all the necessary damages to the walls the lowest quote received was $3218. During the clients residency the owner Anthony in fact resided on the 1st floor of the building per the FHA guidelines. I have all estimated for the cost of the repairs to her unit once she vacated the building. I can forward this request to my lawyer, but I will also be requesting the cost to repaint your clients unit, removal of the carpet, etc. all of which were not normal wear and tear.

Best,
Chiquita

Sent from my iPhone

On Jul 25, 2019, at 12:20 PM, Joan Fenstermaker <joanfenstermaker@gmail.com> wrote:

Please be advised that I represent Charlene Carter in connection with her former tenancy in the above-referenced property. Attached is correspondence regarding same. Please have your attorney contact me to discuss this matter.

**Joan Fenstermaker**
**Kendle, Mikuta & Fenstermaker**
**221 N. LaSalle Street**
**Suite 1430**




# MAINSTREET ORGANIZATION OF REALTORS®
## RESIDENTIAL LEASE
### Not to be used for rental property in the City of Chicago.

| Date of Lease | Term of Lease | | Monthly Rent | Security Deposit |
|---|---|---|---|---|
| | Beginning | Ending | | |
| 7/1/17 | July 1, 2017 | July 1, 2018 | $1050⁰⁰ | $1050⁰⁰ |

**TENANT**
Name(s) _Charlene Carter_
_Charlene Carter_

Premises Address _1729 E. 86th St_
_Unit 2_
City. State, Zip _Chicago Il, 60617_

**LANDLORD**
Name(s) _Anthony Wright_
_N A¹    1729 E. 86th_
Address _N A Chicago Il, 60617_

City, State, Zip _____

In consideration of the mutual covenants and agreements herein stated, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord for a private dwelling, the unit designated above (the "Premises"), together with the appurtenances thereto, and the common elements or limited common elements appurtenant thereto, if any, for the above term. Along with the dwelling unit described herein, the premises include the following (check all that apply):

- [ ] Parking space(s) (Identified as _____ and containing _____ parking spaces).
- [ ] Garage (Identified as _____ and containing _____ parking spaces and _____ transmitters).
- [ ] Refrigerator  [ ] Oven/Range/Stove  [ ] Microwave  [ ] Dishwasher  [ ] Washer  [ ] Dryer
- [ ] Window Air Conditions(s) (#_____)  [ ] Storage locker  [x] Other Description: _HEAT / Water_).

If Dual Agency applies, complete Paragraph 20.

**1. RENT:** Tenant shall pay to Landlord, monthly in advance without demand as rent for the Premises the sum stated above at Landlord's address stated above or such other address as Landlord may designate in writing. Time of such payment is of the essence of this agreement. All rent shall be due as of the first day of each month and shall be paid not later than the fifth day of each month.

Any rent not paid by the fifth day of the month shall incur a late payment penalty of _____% of the monthly rent (if blank then 5%).

**2. SECURITY DEPOSIT:** Tenant herewith has paid to Landlord the security deposit stated above, receipt of which is acknowledged by Landlord, as security for the faithful performance of the terms of this Lease by Tenant, including, but not limited to, payment of rent and to the return of the Premises in undamaged condition. Any unused portion of the security deposit will be returned to Tenant, without interest, within _30_ days (if blank then 30 days), or sooner if required by applicable law, from the date that Tenant has vacated the Premises. Tenant acknowledges that Tenant has inspected the Premises and that the Premises are in good repair, except as specified below, and that no representations as to the condition or repair thereof have been made by the Landlord, or Landlord's Designated Agent, prior to or at the execution of this Lease, that are not herein expressed.
DEFECTS (if any) _none_

---

| Tenant Initial _CC_ | Tenant Initial _CC_ | Landlord Initial _A.W._ | Landlord Initial _A.W._ |
|---|---|---|---|
| Address | _1729 E 86th Street_ | | |

(Page 1 of 6) Rev. 3.2012 © MAINSTREET ORGANIZATION OF REALTORS®



ExHiBiT
B

3. UTILITIES AND SERVICES: In addition to the monthly rent specified above, Tenant shall be responsible for payment of the following (check all that apply):

☒Electricity ☒Gas ☐Water/Sewer ☐Heating Fuel ☐Refuse Removal ☐Homeowner Association Dues

If Tenant fails to pay any of the above, Landlord may pay them on Tenant's behalf. In such event Tenant shall promptly reimburse Landlord for all such payment, plus any penalties paid by Landlord, upon demand by Landlord. In the event any of the above utilities are not levied specifically on or in respect of the Premises, the Tenant shall pay to Landlord as additional rent __10__ % of said utilities charged on the building of which the Premises is a part.

4. USE, SUBLET, ASSIGNMENT: The Premises will be used and occupied as a private, single-family premises by (list individual names): _____ Charlene Carter _____

and no others. Tenant will not permit the Premises to be used for any unlawful purpose or purposes that will injure the reputation of the Premises or of the neighborhood, and will not permit the Premises to remain vacant or unoccupied for more than thirty (30) consecutive days. Tenant will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that herein specified. Tenant will neither assign this Lease nor sublet the Premises without the prior written consent of Landlord; such consent will not be unreasonably withheld. Landlord's consent in this instance will not waive Landlord's right to refuse subsequent assignments or sub-lettings nor will Landlord's consent release Tenant from liability under this Lease.

5. POSSESSION: Landlord will tender possession of Premises not later than the beginning date of this Lease. Possession shall be deemed to have been given when Landlord delivers to Tenant the keys for the vacant Premises. If Landlord does not deliver possession of the Premises to Tenant as stipulated herein, Tenant may cancel and terminate this Lease, with written notice to Landlord. In this instance, neither party will be liable to the other and any sums paid by Tenant under this Lease will be refunded. If Tenant accepts late delivery of the Premises, then the rent will be reduced on a pro-rated daily basis for that monthly term from the date of actual possession. The term of this Lease will not be extended by any such late delivery.

6. ALTERATIONS AND IMPROVEMENTS: Tenant will not make any alterations or improvements, including decorating, without the prior written consent of Landlord. Any alterations or improvements that are made will remain and be surrendered upon termination of this Lease. Any such acceptance will not relieve Tenant for any costs incurred by Landlord as a result of any alterations or improvements. Tenant shall be responsible for all costs incurred by Landlord as a result of any unapproved alteration or improvement.

7. COMPLIANCE: Tenant will in every respect comply with applicable local ordinances with the rules and orders of the health officers thereof, with the orders and requirements of the police department, with the requirements of any underwriters' association so as not to increase the rates of insurance upon the building and contents thereof, with the rules and orders of the fire department with respect to any matters coming within their jurisdiction, with the rules and bylaws of any applicable homeowner's association and with any Landlord's rules attached hereto.

8. MAINTENANCE REPAIRS: Tenant will keep the Premises in good and sanitary condition at Tenant's sole expense during the term of this Lease and during any renewal period or extension thereof. Tenant will maintain the fixtures and mechanical systems in good operating order, and will further be responsible for the following (check all that apply):

☐Snow/ice removal from driveways and sidewalks ☐Lawn mowing
☐Landscape maintenance (other than lawn mowing) ☐Scavenger service
☐_____ None _____

| Tenant Initial CC | Tenant Initial CC | Landlord Initial AW | Landlord Initial AW |

Address_____
(Page 2 of 6) Rev. 3,2012 © MAINSTREET ORGANIZATION OF REALTORS®

97
98  Landlord will be responsible for any structural or major maintenance and repairs, other than routine maintenance
99  and repairs that are not due to Tenant's misuse, waste or neglect or to that of Tenant's authorized occupants or
100 visitors.
101
102 Any appliances contained in the Premises are provided for the Tenant's convenience. Landlord does not warrant the
103 fitness or uninterrupted use or enjoyment of such appliances by Tenant. Any interruption of Tenant's use and
104 enjoyment of such appliances shall not constitute "constructive eviction," nor form the basis for any defense, set-off
105 or counter claim by Tenant.
106
107 Tenant agrees to pay for any and all repairs, including approved or unapproved improvements or alterations, that
108 shall be necessary to put the Premises in the same condition as existed at commencement of this Lease, reasonable
109 wear and tear and loss by fire or acts of nature excepted, and the expense of such repairs shall be included within
110 the terms of this Lease. In the event Tenant shall fail to maintain the Premises as provided hereunder, and upon
111 notice by the Landlord fails to correct any deficiencies, such failure shall constitute grounds for termination of this
112 Lease by Landlord.
113
114 Any maintenance or repair that is not the obligation of Tenant shall be the responsibility of the Landlord. Landlord
115 shall discharge its maintenance and repair responsibilities in a timely manner. In the event Landlord fails to do so,
116 and upon notice by Tenant fails to correct any deficiencies, such failure shall constitute grounds for termination of
117 this Lease by Tenant.
118
119 **9. DAMAGE BY FIRE OR CASUALTY:** If the Premises is damaged by fire or other casualty not due to
120 Tenant's negligence, Landlord will begin repairs as soon as possible. If the damaged Premises is uninhabitable, the
121 rent will cease until the repairs are made. If the Premises is not restored to habitable condition within _____
122 days (if blank, then sixty (60) days) this Lease may be terminated at the option of Tenant upon written notice to
123 Landlord. If Landlord decides not to repair or re-build, Landlord may terminate this Lease by giving Tenant
124 immediate written notice and Tenant will surrender the Premises to Landlord. Landlord shall be responsible for all
125 costs of repair of the Premises, provided the damage is not caused by any willful act or negligence on the part of
126 Tenant. If the damage is caused by Tenant's willful act or negligence, Tenant shall be responsible for all costs of
127 repair of the Premises and Tenant shall remain obligated to pay all rent and other charges through the end of this
128 Lease, regardless of the habitability of the Premises.
129
130 **10. CONDEMNATION:** If any part of the Premises is taken by any authority for any public or quasi-public
131 purpose or use or a settlement or a compromise or a settlement in lieu thereof be made that would substantially alter
132 the intended use of the Premises, this Lease will terminate from the date when possession of the Premises is taken.
133 Tenant will have no right to any damages awarded or settlement made in this regard.
134
135 **11. DEFAULT:** If rent or any other sum due Landlord is unpaid; if there is default in compliance with any term of
136 this Lease; if the Premises is abandoned, deserted or vacated by Tenant; or if the Landlord is otherwise entitled
137 under the law, then Landlord will have the right to terminate this Lease in accordance with any applicable statute or
138 ordinance. In any action with respect to this Lease, the Parties are free to pursue any legal remedies at law or in
139 equity and the prevailing Party in litigation shall be entitled to collect reasonable attorney fees and costs from the
140 non-prevailing Party as ordered by a court of competent jurisdiction.
141
142 **12. HOLDOVER:** Tenant will deliver possession of the Premises to Landlord upon expiration or termination of
143 this Lease. If Tenant fails to do so, Tenant will pay an amount equal to three (3) times the monthly rent specified in
144 this Lease for each month or portion thereof that Tenant remains in possession of the Premises. Tenant will have no
145 rights in the Premises and will be a tenant in sufferance. Tenant will pay to Landlord any damages and costs
146 incurred by Landlord as a result of any holding over. Acceptance of rent after expiration or termination of this

| Tenant Initial | _C C_ | Tenant Initial | _C C_ | Landlord Initial | _A W_ | Landlord Initial | _A W_ |

Address_____
_(Page 3 of 6) Rev. 3.2012 © MAINSTREET ORGANIZATION OF REALTORS'_

147  Lease will constitute a renewal on a month to month basis.
148
149  **13. LIABLITY:** Landlord will not be liable to Tenant for any damage to Tenant's person or property or agents,
150  employees, guests or invitees other than for Landlord's gross negligence. Tenant will indemnify and hold Landlord
151  harmless from all claims of any nature. Tenant shall be required to maintain renters insurance during the term of
152  this Lease. Tenant shall furnish a copy of said policy to Landlord.
153
154  **14. RIGHT OF ENTRY:** Landlord or Landlord's agents will have the right to enter the Premises at reasonable
155  times with reasonable notice, except in the event of an emergency, in order to inspect, to make ordinary, necessary
156  repairs or alterations, to enforce the provisions of this Lease and to show the Premises to prospective purchasers or
157  tenants. Tenant will allow Landlord to have placed upon the Premises, at all times, notices of "For Sale" and/or "To
158  Rent" and will not interfere with the same.
159
160  **15. SUBORDINATION:** This Lease is subject to and subordinate to the lien of all mortgages now or hereafter
161  placed on any part of Landlord's property that includes the Premises, to any extensions and renewals thereof and to
162  advances now or thereafter made on the security thereof. Tenant will execute such instruments evidencing
163  subordination at Landlord's request. If Tenant fails to comply with such request, Tenant hereby irrevocably
164  empowers Landlord to do so in Tenant's name.
165
166  **16. NOTICES:** Any notice to Tenant addressed to the Premises or the Landlord at the address designated by
167  Landlord will be sufficient, if in writing and delivered to either party in person or by certified mail.
168
169  **17. SEVERABILITY:** If any part if this Lease is construed to be unenforceable, the remaining parts will remain in
170  full force and effect as though any unenforceable part was not written into this Lease.
171
172  **18. LEAD-BASED PAINT DISCLOSURE:** Prior to signing this Lease, Tenant (check one) ☑has ☐has not
173  received the EPA Pamphlet, "Protect Your Family from Lead in Your Home," and (check one) ☐has ☑has not
174  received a Lead-Based Paint Disclosure.
175
176  **19. RADON DISCLOSURE:** Prior to signing this Lease, Tenant (check one) ☐has ☑has not received a Radon
177  Disclosure.
178
179  **20. RULES AND REGULATIONS:** Tenant and other authorized occupants and guests will comply with all
180  occupancy rules and regulations of Landlord, if any, and, with any homeowner association or condominium
181  association rules and regulations as amended from time to time and furnished to Tenant. Failure to comply with the
182  occupancy rules and regulations will be considered a default under the terms of this Lease.
183
184  **21. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously consented to
185  _____ (Designated Agent) acting as a Dual Agent in
186  providing brokerage services on their behalf and specifically consent to Designated Agent acting as a Dual Agent
187  with regard to the transaction referred to in this Lease.
188
189  **22. ATTORNEY REVIEW:** The Parties agree that their respective attorneys may approve or make modifications
190  to this Lease, other than stated rental price, within five (5) business days after the date of the Lease. If within ten
191  (10) Business Days after the Date of Acceptance, written agreement cannot be reached by the Parties with respect
192  to resolution of proposed modifications, then either Party may terminate this Lease by serving written notice to the
193  other Party, whereupon this Lease shall be null and void and security deposit shall be refunded to Tenant by
194  Landlord. IF WRITTEN NOTICE IS NOT SERVED WITHIN THE TIME SPECIFIED, THIS PROVISION

Tenant Initial ___ Tenant Initial ___ Landlord Initial ___ Landlord Initial ___
Address _____
(Page 4 of 6) Rev. 3,2012 © MAINSTREET ORGANIZATION OF REALTORS

195  SHALL BE DEEMED WAIVED BY THE PARTIES, AND THIS LEASE SHALL REMAIN IN FULL FORCE
196  AND EFFECT.
197
198  **23. OTHER TERMS OR PROVISIONS:**
199       (a) Pets ☐ are ☒ are not permitted under this Lease.  If pets are permitted, such permission is limited as
200            follows: type _____ weight _____ number of _____.    Further,   the
201            following additional conditions apply: _____.
202       (b) In addition to any other remedies afforded to Landlord under this Lease, Landlord may charge Tenant an
203            amount equal to 5% of the monthly rent for any returned check. Two occurrences of returned checks during
204            the term of this Lease, including any extension of the term thereof, will require all future rental payments
205            by Tenant to be made by cashiers or certified check.
206       (c) Tenant shall pay ten dollars ($10.00) for each and any lost key replaced by Landlord.
207       (d) Tenant will not install satellite dishes, antennae or cables for television, radio, sound equipment, computer
208            equipment or Internet access without Landlord's written consent in each case, and shall remove same and
209            restore all walls or other appurtenances prior to vacating Premises.
210       (e) (Check all that apply) Notice is hereby provided pursuant to Illinois statute that ☐ Landlord ☐ Tenant is an
211            Illinois licensed Real Estate Broker
212       (f) Landlord is required to re-key all locks prior to possession.
213
214  **24. ENTIRE AGREEMENT:** This document and the documents incorporated herein are the entire agreement of
215  the Parties and no representations of either party are binding unless contained herein.  No oral statements will be
216  binding on either party. This Lease may only be modified by mutual agreement of the Parties. The following are
217  hereby incorporated herein and made part of this Lease: _____
218  _____.
219
220  **THIS FOLLOWING OPTIONAL PARAGRAPH APPLIES ONLY IF INITIALED BY ALL PARTIES.**
221
222  _ _ _ _ _ _ **25. AGREEMENT FOR PROPOSED FUTURE PURCHASE BY TENANT:** On or before the
223  Commencement Date of this Lease, the Landlord and Tenant shall enter into a mutually acceptable agreement for
224  the Tenant's proposed future purchase of the Premises. In the event such agreement has not been executed this
225  Lease shall be null and void.
226
227  [LINES 226-243 INITENTIONALLY LEFT BLANK]
228
229
230
231
232
233
234
235
236
237
238
239
240
241
242
243

244 THIS IS A LEGALLY BINDING DOCUMENT. PRIOR TO THE EXECUTION OF THIS LEASE, LANDLORD
245 AND TENANT ARE ENCOURAGED TO CHECK ORDINANCES AND REGULATIONS TO VERIFY THE
246 REQUIREMENTS OF THE APPLICABLE GOVERNMENTAL AUTHORITY IN WHICH THE PREMISES IS
247 LOCATED.

248 IN WITNESS WHEREOF, the parties have signed and sealed this Lease on the date before written.

249 DATE _____          DATE _____

250 *Charlene Carter*

251 TENANT SIGNATURE                         LANDLORD SIGNATURE

252 *Charlene Carter*

253 TENANT SIGNATURE                         LANDLORD SIGNATURE

254
255                              GUARANTEE
256
257 For value received, the undersigned hereby guarantees the payment of the rent and the performance of the
258 covenants by the Tenant of the terms of the Lease.

259                                           DATE _____
260 GUARANTOR SIGNATURE
261 _____
262 PRINT GUARANTOR'S NAME                    GUARANTOR'S PHONE
263 _____
264 GUARANTOR'S ADDRESS, CITY, ZIP

265
266                          *FOR INFORMATION ONLY*
267                                           773-718-2785
268
269 Tenant's Cell Phone Number(s)             Landlord's Cell Phone Number(s)
270
271 Tenant's Other Phone Number(s)            Landlord's Other Phone Number(s)
272
273 Tenant's E-Mail Address                   Landlord's E-Mail Address
274
275 Tenant's E-Mail Address                   Landlord's E-Mail Address
276
277 Tenant's Managing Broker        MLS#      Landlord's Managing Broker      MLS#
278
279 Tenant's Designed Agent         MLS #     Landlord's Designated Agent     MLS #
280
281 Phone                  Fax                Phone                  Fax
282
283 Tenant's Designated Agent's     E-Mail    Landlord's Designated Agent's   E-Mail
284
285 Tenant's Attorney                         Landlord's Attorney
286
287 Phone                  Fax                Phone                  Fax
288
289 Tenant's Attorney's E-Mail                Landlord's Attorney's E-Mail
290
291

Tenant Initial __C C__   Tenant Initial __C C__   Landlord Initial __A w__   Landlord Initial __A w__
Address_____
*(Page 6 of 6) Rev. 3.2012 © MAINSTREET ORGANIZATION OF REALTORS®*